# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 16-0084-CR-W-RK |
| | ) | |
| CURTIS DAVID BARKER, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Before the Court is defendant Curtis David Barker's motion to suppress evidence. (Doc. 28). The Government has filed suggestions in opposition. (Doc. 29). A hearing was held on the motion during which the parties presented evidence. (Doc. 38). Defendant Curtis David Baker was charged on March 10, 2016, in a three-count indictment with felon in possession of a firearm and ammunition (Count 1), possession with intent to distribute marijuana and cocaine (Count 2) and firearm with drug trafficking (Count 3). Defendant Barker's motion to suppress argues that the police violated his constitutional rights under the Fourth Amendment when they unlawfully detained his vehicle, detained him, and searched his vehicle and his person. Defendant requests the Court suppress all physical evidence and testimony related to such evidence obtained in violation of his Fourth Amendment rights.

## Statement of Facts

On January 31, 2016, Missouri Highway Patrol Troop Pilot Sgt. Kevin Haywood was conducting aircraft speed checks of highway traffic along I-29 in and near Andrew County, Missouri. In 2016, Sgt. Haywood had been with the Missouri State Highway Patrol for approximately 31 years and had been a pilot for 21 years. Sgt. Haywood had specialized training in conducting aerial speed checks of vehicles and had many years of experience in conducting such speed checks. Aerial speed checks are done by using a calibrated chronometer to measure the time a vehicle takes to pass between two known points. The two known points are markers aka/speed blocks which are set out on the roadway at specific distances. Then a mathematical formula is applied to ascertain the vehicle's average speed during that distance of travel. The

Missouri State Highway Patrol indicates that this form of speed checking is more reliable than radar.

      On January 31, 2016, prior to conducting aerial speed checks on I-29, Sgt. Haywood confirmed the chronometer was correctly calibrating. Sgt. Haywood did the calibration check by timing the travel time of Highway Patrol Cpl. Dudeck's vehicle between the two speed blocks. Cpl. Dudeck set his cruise control on 69 miles per hour and Sgt. Haywood correctly calculated from the aircraft Cpl. Dudeck's vehicle's speed. Sgt. Haywood confirmed the correct calibration and memorialized it on his Aircraft Speed Check Log for January 31, 2016, for 11:00 a.m. to 12:00 pm.[1]

      On January 31, 2016, at approximately 11:19 a.m., Sgt. Haywood did an aerial speed check on a truck that was later determined to be driven by Defendant. Sgt. Haywood confirmed that Defendant was driving at 80 miles per hour in a posted speed limit zone of 70 miles per hour. Sgt. Haywood communicated this information to Cpl. Dudeck who was in his Highway Patrol vehicle on I-29. Cpl. Dudeck started following the truck described by Sgt. Haywood and Sgt. Haywood confirmed to him that he was following the correct truck. Cpl. Dudeck engaged his patrol vehicle's overhead lights and pulled over the truck on the shoulder of I-29 for exceeding the speed limit. The truck was a 2012 red Dodge Ram 1500 truck, bearing South Carolina registration IFY767.

      Cpl. Dudeck exited his vehicle and approached the passenger side of the truck, away from traffic. When the passenger rolled down her window Cpl. Dudeck noticed a strong odor of cologne. Based on his training and experience (10 years with Missouri Highway Patrol, canine handler in Marines, and Oliver, Missouri law enforcement) Cpl. Dudeck knew that a strong smell of cologne can be used to mask the smell of controlled substances from law enforcement. Cpl. Dudeck also noticed that the occupants in the vehicle did not have on their seatbelts and were acting nervous and breathing heavily. Cpl. Dudeck directed Defendant, the driver of the truck, to exit the truck and go sit in the passenger seat of his patrol vehicle while Cpl. Dudeck asked the female passenger for her identification information. After attaining the female passenger's

---

[1]     Sgt. Haywood testimony at the January 24, 2018 suppression hearing provided extensive detail as to the use and reliability of aerial speed checks done by Missouri Highway Patrol pilots. Sgt. Haywood referenced his own personal training and experience in use of aerial speed checks and the reliability of such speed checks. The relevant calibration check that was done on January 31, 2016 for 11:00 a.m. to 12:00 p.m. is memorialized as set forth in Government's exhibit 1.

identification, Cpl. Dudeck returned to his patrol vehicle where defendant was sitting in the passenger seat. The dash cam recorded Cpl. Dudeck's and Defendant's interaction while in the patrol vehicle. Cpl. Dudeck obtained Defendant's Colorado driver's license information and confirmed that he was Curtis David Baker. Cpl. Dudeck confirmed that Defendant's license was valid by running a computer check in the patrol vehicle. While sitting in the vehicle with Defendant, Cpl. Dudeck smelled a strong odor of cologne and green and burnt marijuana emitting from Defendant. Cpl. Dudeck also noticed Defendant did not make eye contact, kept his sunglasses on, was fidgeting, acting nervous and breathing heavy. Based on his training and experience Cpl. Dudeck was familiar with green and burnt marijuana odors. Cpl. Dudeck was also familiar with cues such as strong cologne smell and nervous behaviors indicating illicit drug activity.

     As Cpl. Dudeck was trying unsuccessfully to check the female passenger's identification information in the patrol vehicle computer based on the information she had provided, he noticed the female passenger was holding out the truck window the insurance information that she was originally not able to produce. Cpl. Dudeck exited his patrol vehicle and again approached the truck to retrieve the insurance information and try to obtain additional identification information from the female passenger in order to identify her. As Cpl. approached the truck, he could smell the odor of green marijuana. Cpl. Dudeck stated at this point he believed he had probable cause to search the truck.

     Cpl. Dudeck returned to his patrol vehicle with the information provided by the female passenger at which time he told Defendant, who was still sitting in the passenger side, that he was going to search the truck because he had smelled the odor of marijuana. Cpl. Dudeck asked Defendant "How much marijuana is going to be in the truck when I search it?" Defendant indicated there was not any marijuana in the truck. Cpl. Dudeck responded that he could smell the odor of marijuana and stated that if Defendant possessed a misdemeanor amount of marijuana, which was less than 35 grams, then Cpl. Dudeck would just issue Defendant a ticket. Defendant responded by stating he had a little can in the front console of the vehicle but that was all there was. Defendant stated that the female passenger could give it to Cpl. Dudeck if he asked. Cpl. Dudeck requested Defendant put his hands on the dash of the car while he searched the car for safety purposes. Cpl. Dudeck also radioed for back up.

The female passenger provided to Cpl. Dudeck a can that was consistent with the one described by the Defendant. Inside the can Cpl. Dudeck found a green leafy substance that Cpl. Dudeck believed, based on his training and experience, to be marijuana. At 11:40:47 a.m. Cpl. Dudeck secured the can in the trunk of his patrol vehicle and directed Defendant out of the patrol vehicle to arrest him for possession of the marijuana. Cpl. Dudeck asked Defendant if there was anything illegal on him or if he had any weapons on his person and Defendant indicated he did not. In a search incident to arrest Cpl. Dudeck found a loaded Cobray Firearm 410/45 long colt double barrel derringer pistol in Defendant's front pocket. Also discovered in the search incident to arrest was a roll of cash ($4,100.00) in a pocket of the leather vest Defendant was wearing. Located in the front pocket of Defendant's sweatshirt was a baggie with a white powdery substance (later confirmed as cocaine). Defendant was placed under arrest and handcuffed and seated in the passenger seat of the patrol vehicle at approximately 11:46:54 a.m., at which time Defendant spontaneously stated "Oh well, it is all over now." At approximately 11:48:40 a.m. Corporal Dudeck apprised Defendant of his <u>Miranda</u> rights. Defendant orally acknowledged he understood his rights. At this time, Cpl. Dudeck stated he was going to search Defendant's vehicle. Defendant stated to Cpl. Dudeck that whatever he found in the truck belonged to him, and the female passenger did not have anything to do with it.

Cpl. Dudeck began conducting a search of Defendant's vehicle and found extra-large camouflage duffle bag in the back passenger seat of the truck which contained several vacuum sealed packages of marijuana. The bag weighted approximately 40 pounds. The second officer who had arrived on the scene to assist, Cpl. Schmultzler, opened the cover to the bed of the truck and located several trash bags. Inside the trash bags were more vacuum sealed packages of marijuana. The approximate weight of the marijuana found in the truck was later determined by the lab to be just under 100 pounds. Cpl. Dudeck testified that the large quantity of marijuana found was raw marijuana which has a strong odor, which was the odor he had been smelling.

<u>Discussion</u>

**I. Traffic Stop and Detention**

Defendant argues that Cpl. Dudeck's initiating of the traffic stop of his truck was unlawful. A review to the evidence presented at the suppression hearing shows no support for this claim. Rather, the evidence shows that Defendant's truck was calculated to be speeding by the most reliable method that the Missouri Highway Patrol has to calculate a vehicle's speed.

Defendant's vehicle was calculated by the aerial speed check to be traveling at a speed of 80 miles per hour. The speed limit for the area was 70 miles per hour, thus Defendant was traveling 10 miles per hour in excess of the speed limit. "[T]o justify [a traffic stop], officers need only reasonable suspicion." Heien v. North Carolina, 135 S.Ct. 530, 536 (2014). Reasonable suspicion exists when an officer has a "particularized and objective basis for suspecting the particular person stopped of breaking the law." Id. The Eighth Circuit has held that an "a traffic violation-however minor-creates probable cause to stop the driver of a vehicle." United States v. Linkous, 285 F.3d 716, 719 (8th Cir. 2002). See also United States v. Bell, 86 F.3d 820, 822 (8th Cir. 1996) ("[A]ny traffic violation, even a minor one gives an officer probable cause to stop the violator."); United States v. Neumann, 183 F.3d 753, 756 (8th Cir. 1999) ("[Officer] had probable cause to stop [the defendant] for speeding because he was traveling five miles per hour over the posted speed limit"). Here, the Missouri Highway Patrol, Cpl. Dudeck, stopped Defendant in his vehicle for driving 10 miles per hour in excess of the legal speed limit. Thus, Cpl. Dudeck had reasonable suspicion and even probable cause to pull over Defendant in his truck.

Defendant also argues that his person was unlawfully detained during the traffic stop of his truck. The law in the 8th Circuit is clear on this issue. During a traffic stop, reasonable investigation can be conducted without violating the Fourth Amendment. Such reasonable investigation includes asking for driver's license, vehicle registration, requesting the driver sit in the officer's patrol vehicle, and asking about the driver's destination and purpose. United States v. McCoy, 200 F.3d 582, 584 (8th Cir. 2000); United States v. Johnson, 58 F.3d 356, 357 (8th Cir. 1995). Thus here, Defendant's Fourth Amendment rights were not violated while Cpl. Dudeck briefly detained him during the traffic stop.

**II. Probable Cause to Search the Truck**

Defendant alleges that the law enforcement officers had no probable cause to search his truck. The Government asserts that the totality of the circumstances support that Cpl. Dudeck had probable cause.

Under the well-established automobile exception to the warrant requirement, the case law clearly provides that "[u]nder the automobile exception, officers may search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity." United States v. Cortez-Palomino, 438 F.3d 910, 913 (8th Cir. 2006). "Probable cause exists where based on the totality of the circumstances, there is a fair probability that contraband

or evidence of a crime will be found in a particular place." Id. "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." United States v. Neumann, 183 F.3d at 756. "In determining probable cause, law enforcement officers may draw inferences based upon their experience." Cortez-Palomino, 438 F.3d at 913. "In making the probable cause determination, [courts] apply a common sense approach and consider all relevant circumstances." United States v. Vore, 743 F.3d 1175, 1179 (8th Cir. 2014).

Here, Cpl. Dudeck set forth in detail his basis for believing illegal marijuana was in Defendant's truck. Cpl. Dudeck explained smelling the odor of burnt and green marijuana multiple times during the traffic stop, and also recognizing Defendant's attempt to cover up the smell with a strong cologne smell. Cpl. Dudeck also detailed Defendant's nervous behavior that cued him to likely criminal activity.

Cpl. Dudeck explained he first smelled a strong cologne smell when he initially approached Defendant's truck, and then again smelled strong cologne and green and burnt marijuana smells emitting from the Defendant when he was sitting in the patrol vehicle. Cpl. Dudeck testified the strong smell of green marijuana was again apparent to him upon his return to Defendant's truck to retrieve the additional insurance and identification information from the female passenger. Cpl. Dudeck's training and experience made him familiar with the smells of both burnt and green marijuana, as well as the commonly used technique of trying to mask such odors with copious amounts of cologne. See United States v.McCoy, 200 F.3d at 584 (strong smell of air freshner recognized as potential masking agent of marijuana odor). The Eighth Circuit Court has "held numerous times that the smell of marijuana coming from a vehicle during a proper traffic stop gives an officer probable cause to search for drugs." United States v. Smith, 789 F.3d 923, 928 (8th Cir. 2015). See also United States v. Brown, 634 F.3d 735, 438 (8th Cir. 2011) (officers had probable cause to search the entire vehicle where officers smelled odor of burnt marijuana coming from the vehicle and defendant's friend admitted to smoking marijuana); United States v. Winters, 221 F.3d 1039, 1042 (8th Cir. 2000) (finding probable cause to support the search of vehicle in which state trooper smelled raw marijuana); United States v. McCoy, 200 F.3d at 584 (the odor of burnt marijuana on the suspect and the smell of air freshener in the car gave officer probable cause to search the vehicle); United States v. Neumann, 183 F.3d at 756 (officers detection of the smell of burn marijuana gave him probable cause to search the entire vehicle). Cpl. Dudeck also explained the nervous behaviors of

Defendant which cued him to likely illegal activity.  Cpl. Dudeck explained Defendants behavior such as failure to make eye contact, keeping on his sunglasses on in the patrol vehicle, and breathing heavy and rapidly all cued him to likely illegal activity.  Cpl. Dudeck's smelling of the marijuana and the nervous behaviors of Defendant were sufficient to establish probable cause to search Defendant's vehicle.

The Court notes further that when Cpl. Dudeck told Defendant he smelled the marijuana and would be searching Defendant's truck, Defendant told Cpl. Dudeck that there might be marijuana in his car, but only a small amount that he had in a can in his truck.  Defendant stated that Cpl. Dudeck could have the can and that he should ask the female passenger to give it to him.  Defendant's passenger gave the can to Cpl. Dudeck and marijuana was found in the can.  These statements by the Defendant and the marijuana found in the can further supported Cpl. Dudeck's probable cause to search Defendant's truck for marijuana. The totality of the circumstances in this case support a finding that Cpl. Dudeck has probable cause to search Defendant's truck.

### III.  Probable Cause to Arrest and Search of Defendant Incident to Arrest

Defendant's assertions that his arrest and corresponding search of his person incident to arrest were unlawful are not supported by the evidence.  Cpl. Dudeck obtained the can containing the green leafy substance lawfully from the female passenger of the truck and was told by Defendant that the marijuana in the can belonged to him.  The evidence supports that Cpl. Dudeck had probable cause to arrest Defendant for the possession of the marijuana.  Accordingly, the search of Defendant subsequent to his arrest was lawful.  A search incident to arrest is a well-established exception to the warrant requirement.  Arizona v. Grant, 129 S.Ct. 1710, 1716 (2009).

### Conclusion

Based on the foregoing, there is no evidence to support that Defendant's rights were violated under the Fourth Amendment.  Accordingly, there is no basis to support Defendant's request for suppression of the evidence found in his vehicle, on his person or testimony related thereto.  It is therefore,

RECOMMENDED that defendant Curtis Barker's motion to suppress be denied.  (Doc. 28).

The parties have fourteen days from the date of this Report and Recommendation within which to file and serve objections. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

Dated this 18th day of April, 2018, at Kansas City, Missouri.

/s/ *Matt J. Whitworth*
MATT J. WHITWORTH
United States Magistrate Judge